Todd TEMPLETON *v.*
UNITED PARCEL SERVICE, INC. et al.

04–659                                    216 S.W.3d 563

Supreme Court of Arkansas
Opinion delivered November 3, 2005

*Law Offices of John R. Van Winkle, P.A.*, by: *John R. Van Winkle*, for appellant.

*Walker Lansden Dortch & Davis PLLC*, by: *Paula D. Walker*, for appellees.

J IM GUNTER, Justice. This is an action by the appellant, Todd Templeton, to recover on his claims for outrage and deceit from the appellees: United Parcel Service ("UPS"), James Beavers, and Mark Hagge. The Washington County Circuit Court entered an order granting the appellees' motion for summary judgment on these claims, and Mr. Templeton is appealing that order. We affirm.

This lawsuit arises out of Mr. Templeton's resignation from his job with UPS in Springdale on June 4, 2001. In late May of 2001, Mark Hagge, a security investigator for UPS, received a report from Chris Parrish, a UPS employee, that two other UPS employees had been involved in a theft. During the investigation of that theft, Mr. Hagge interviewed Jeremy Williams and Chris Eubanks. Both Mr. Williams and Mr. Eubanks admitted that they had stolen drugs from the UPS Springdale Center, identified Mr. Templeton as having stolen drugs from the Center also, and signed written statements implicating Mr. Templeton. Specifically, Mr. Eubanks stated that he saw Mr. Williams and Mr. Templeton take two to three bottles of hydrocodone out of the over-goods area. The over-goods area is the area where items that have come out of packages or packages that do not have labels are held for processing in Little Rock. Mr. Eubanks also stated that Mr. Templeton told him that he took a package off of the belt that contained 3000 generic xanax pills. Mr. Williams stated that he and Mr. Eubanks each took one bottle of pills from the over-goods area and then he told Mr. Templeton about the pills being in the area. Mr. Williams stated that, after he told Mr. Templeton about the pills, another bottle of pills disappeared from that area. Mr. Williams also claimed that he gave Mr. Templeton about thirty-five pills for a back injury. Both Mr. Williams and Mr. Eubanks resigned after being given the option of termination or resignation.

After these interviews, Mr. Hagge prepared a summary of the investigation and gave it to Sergeant Shriver of the Springdale Police Department, advising Sergeant Shriver that he had not yet interviewed Mr. Templeton because he was on vacation and that the information was based on the statements of Mr. Williams and Mr. Eubanks only. On June 4, 2001, Mr. Hagge met with Mr. Templeton and the union steward, Tom Dedrich, and explained that Mr. Williams and Mr. Eubanks had admitted stealing some pharmaceuticals and had implicated him in the theft also. Mr. Templeton denied any involvement in the theft, but admitted that Mr. Williams had given him some muscle relaxers in the parking

lot after he got off of work one day. Mr. Templeton signed a written statement confirming this.

Mr. Hagge reported this information to the Labor Manager, Walt Dickson, who decided to terminate Mr. Templeton. Jim Beavers, the Springdale Center manager, and Mr. Hagge met with Mr. Templeton on the evening of June 4, 2001, and told him that he was being terminated for the possession of drugs on UPS property. Mr. Hagge told him that he could resign instead, but that if he did not resign, he would be terminated.

Mr. Templeton resigned and then filed this action against the appellees, claiming wrongful termination, breach of contract, outrage, and deceit. In a removal action, the federal court disposed of the breach-of-contract claim and the wrongful-termination claim. Therefore, only the claims for outrage and deceit remain. The circuit court granted the appellees' motion for summary judgment on these claims, and Mr. Templeton appeals.

We set forth the standard of review for summary judgment in *Jordan v. Diamond Equipment & Supply Co.*, 362 Ark. 142, 207 S.W.3d 525 (2005), stating:

> Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Riverdale Development Co. v. Ruffin Building Systems Inc.*, 356 Ark. 90, 146 S.W.3d 852 (2004); *Craighead Elec. Coop. Corp. v. Craighead County*, 352 Ark. 76, 98 S.W.3d 414 (2003); *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878 (2002). The burden of sustaining a motion for summary judgment is the responsibility of the moving party. *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a *prima facie* entitlement to summary judgment, the non-moving party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidence presented by the moving party in support of its motion leaves a material fact unanswered. *George v. Jefferson Hosp. Ass'n Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999). We view the evidence in the light most favorable to the non-moving party, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998).

*Jordan, supra.*

Mr. Templeton's first point on appeal is that the circuit court erred in granting summary judgment on his claim for

outrage. In order to establish the tort of outrage, the plaintiff must establish the following four things: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the defendant's actions were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Brown v. Tucker*, 330 Ark. 435, 441, 954 S.W.2d 262, 266 (1997). We have taken a strict view in recognizing an outrage claim, particularly where it is alleged in employment relationships. *See, e.g., Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991); *Sterling v. Upjohn Healthcare Services, Inc.*, 299 Ark. 278, 772 S.W.2d 329 (1989). We explained in *City of Green Forest v. Morse*, 316 Ark. 540, 873 S.W.2d 155 (1994), the reason we take such a narrow view in recognizing claims for the tort of outrage that arise out of the discharge of an employee:

> The reason is that an employer must be given considerable latitude in dealing with employees, and at the same time, an employee will frequently feel considerable insult when discharged. In this context we have written: "Because of the employer's right to discharge an at-will employee, a claim of outrage by an at-will employee cannot be predicated upon the fact of the discharge alone. However, the manner in which the discharge is accomplished or the circum- stances under which it occurs may render the employer liable." *Harris v. Arkansas Book Co.*, 287 Ark. 353, 356, 700 S.W.2d 41, 43 (1985). In another employee discharge case, *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 244-45, 743 S.W.2d 380, 383 (1988), we wrote, "The recognition of the tort of outrage does not open the doors of the courts to every slight insult or indignity one must endure in life."

*Morse, supra.*

We have held that a plaintiff met the standard for proving the tort of outrage in an employee-discharge situation in only one case, *Tandy Corp. v. Bone*, 283 Ark. 399, 678 S.W.2d 312 (1984). In *Tandy*, the employer, Tandy Corporation, thought that Bone, the manager of one of its stores in Little Rock, might be stealing either money or merchandise. Bone suffered from a personality disorder which made him more susceptible to stress and fear than normal.

For three years before the incident, he had been taking a tranquil-izer prescribed by his psychiatrist. To investigate Tandy's suspi-cions of theft, Bone's supervisor and two security officers came to the store to conduct an investigation of the losses. Bone was questioned at thirty-minute intervals throughout the day. Accord-ing to Bone, the security men cursed him, threatened him, and refused to allow him to take his prescribed medication. Bone was also asked to take a polygraph examination, which he did. At that time, he was in a highly agitated condition and again asked for his medication. The request was denied. He testified that he had asked to be allowed to take his medication at least three times, but each time his request was refused. He stated that once he reached in a desk drawer for his medicine, but one of the investigators slammed the drawer shut. He was eventually taken to another location in Little Rock for the polygraph examination, and, while there, he hyperventilated. Bone attempted to return to work the next day, but was unable to do so. He was subsequently hospitalized for a week. In holding that the circuit court did not err in sending Bone's claim of outrage to the jury, we made clear the basis for the holding, stating:

> It was for the jury to decide whether under the circumstances it was outrageous conduct for the employer to deny Bone his medication and to continue to pursue the investigation knowing Bone was on medication or Valium. *We emphasize that the notice to the employer of Bone's condition is the only basis for a jury question of extreme outrage.*

*Tandy Corp. v. Bone,* 283 Ark. 399, 408, 678 S.W.2d 312, 317 (reversed and remanded on other grounds)(emphasis added).

In the case at bar, the appellees' conduct simply was not "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community." *Brown, supra.* The outrageous conduct that Templeton principally complains of relates to the conduct of the appellees toward Mr. Eubanks — that is, that they forced him to implicate Mr. Temple-ton when there was absolutely no proof that any drugs were even missing from UPS. Conduct directed towards Mr. Eubanks does not give rise to a claim by Mr. Templeton against that conduct, particularly in light of the fact that Mr. Templeton himself admitted that he accepted drugs from another UPS employee in the UPS parking lot. We hold that, even if all allegations of theft against Mr. Templeton were untrue, UPS's conduct in investigat-

ing the alleged theft, interviewing Mr. Templeton, and making a decision to fire him if he failed to resign for accepting drugs on UPS property does not constitute conduct that is extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community. We affirm the circuit court's decision granting summary judgment on Mr. Templeton's claim for outrage.

Mr. Templeton's next claim on appeal is that the circuit court erred in granting summary judgment on his claim of deceit, or fraud. To establish fraud, a plaintiff must prove five elements: (1) a false representation of material fact; (2) knowledge or belief by the defendant that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance upon the representation; and (5) damage suffered as a result of that reliance. *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 580, 66 S.W.3d 568, 577 (2002). Mr. Templeton has not made it clear to us exactly what false representations of material fact were made, but merely argues generally that appellees made implied threats, false accusations, and lies about him. The only alleged misrepresentations we can glean from his generalizations are these: (1) Mr. Hagge accused Mr. Templeton of theft; (2) when Mr. Hagge offered resignation instead of termination, he allegedly stated that, if he were terminated, Mr. Templeton would never work in the area again; and (3) Mr. Hagge allegedly assured Mr. Templeton that no harm would come to him if he would sign a statement that he received pills from Mr. Williams.

We reiterate that, to prove fraud, Mr. Templeton must offer proof that these resprentations were false, that appellees knew or believed they were false, that they were made with the intent to induce action on Mr. Templeton's part, and that he justifiably relied upon the false representations in so acting. With regard to the first alleged misrepresentation, Mr. Templeton cannot prove the first element — that is, that this statement is actually false. Mr. Templeton's own testimony does not support his accusation that Mr. Hagge accused him of stealing. Mr. Templeton testified that Mr. Hagge stated that two fellow UPS employees said that he stole drugs. This statement was true. Whether the two employees were lying or not is irrelevant to Mr.

Templeton's claim of deceit on the part of the appellees. Mr. Hagge merely reported, truthfully, that the two UPS employees implicated Mr. Templeton in the theft.

■ Mr. Templeton has also failed to offer proof on the second alleged misrepresentation. Mr. Templeton testified in his deposition that Mr. Hagge and Mr. Beavers told him that if he were terminated and fought it, he would end up with a bad work recommendation and probably would not get a job in the area. Mr. Hagge then offered him the option of resigning and keeping a clean work record. Even assuming Mr. Templeton's characterizations of these statements is correct, he has not shown that either Mr. Hagge or Mr. Beavers knew or believed that this was a misrepresentation, that they intended Mr. Templeton to rely on this misrepresentation, or that Mr. Templeton acted in justifiable reliance on this alleged misrepresentation. Mr. Templeton testified that he opted to resign with a clean work record because he did not want to take a chance on not being able to get future employment. He felt that a termination for any reason could hurt his work record. In other words, he believed the statements were true, and he has not offered any proof that Mr. Hagge and Mr. Beavers did not also believe the statements were true. Finally, Mr. Templeton did not act in reliance upon any misrepresentation; he acted to preserve a clean work record.

■ With respect to the third alleged misrepresentation, Mr. Templeton has offered no proof that Mr. Hagge actually made the statement attributed to him that no harm would come to Mr. Templeton if he would sign a statement that he received pills from Mr. Williams. Mr. Hagge denies making such a statement, and Mr. Templeton testified that he was not certain if Mr. Hagge or the union steward, Mr. Dedrich, actually made the statement. To survive a motion for summary judgment, the non-moving party must meet proof with proof and demonstrate the existence of a material issue of fact. *Jordan, supra.* Mr. Templeton's bare allegation that he "thought" Mr. Hagge made this statement simply is not sufficient. Moreover, he has offered no proof that if he had not signed the statement, he would not have been terminated. He had already admitted in his interview with Mr. Hagge that he received the pills from Mr. Williams. In the summary-judgment hearing, his attorney stated that Mr. Templeton "was glad to tell them that he took the pills in the investigation meeting" and that he would have admitted this whether or not the allegedly false representation had

been made. He simply claims that a false representation that nothing would happen to him caused him to sign a written statement. Mr. Templeton neither alleges nor offers any proof that UPS would not have terminated him simply because he did not sign a written statement. We reject this argument.

Finally, even if he could establish the other elements, Mr. Templeton cannot establish that he suffered damage as a result of his reliance on any of these allegedly false representations. False or fraudulent representations not resulting in injury are not actionable. *Tyson Foods, Inc.*, *supra.* Any damage Mr. Templeton suffered was not due to his justifiable reliance, but to his unemployment. He admitted in the summary-judgment hearing that UPS had a right to terminate him and, therefore, that he would have been unemployed whether he resigned or not. Therefore, he cannot establish that he suffered damage because of justifiable reliance on appellees' alleged misrepresentations. Any damages he suffered were caused by his unemployment, which would have occurred even if he had chosen not to resign. Therefore, the circuit court did not err in granting summary judgment to the appellees. Accordingly, we affirm the judgment of the circuit court.

Affirmed.