CRAWFORD COUNTY, Arkansas  *v.*  Dottie JONES

05–680                                              232 S.W.3d 433

Supreme Court of Arkansas
Opinion delivered March 16, 2006

*Bachelor & Newell*, by: *C. Burt Newell* and *Angela R. Echols*, for appellant.

*The Baker Law Firm, PLLC*, by: *Rinda Baker*, for appellee.

DONALD L. CORBIN, Justice. Appellant Crawford County, Arkansas, appeals a jury verdict awarding Appellee Dottie Jones damages for her breach-of-contract claim. On appeal, the County argues that the jury's verdict was against the preponderance of the evidence. Jones cross-appeals, arguing that the trial court erred in granting the County's motion for directed verdict on her claims for violation of the Arkansas Whistle-Blower Act, codified at Ark. Code Ann. §§ 21-1-601–609 (Repl. 1999 & Supp. 2003), and outrage. She also asserts that it was error for the trial court to deny her posttrial motion for attorney's fees. This case is before us on a petition for review from a decision of the Arkansas Court of Appeals in *Crawford County v. Jones*, 91 Ark. App. 161, 209 S.W.3d 381 (2005). We granted the petition for review pursuant to Ark. Sup. Ct. R. 2-4(c)(iii). Accordingly, we consider the case as though it had been

originally filed in this court. *Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005); *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). We affirm on direct appeal and affirm in part, reverse in part on cross-appeal.

Jones was hired as an employee of the Crawford County Assessor's Office in 1979 and became an appraiser in that office in 1985. In 1999, Crawford County contracted with Accurate Mapping Company ("AMC"), to conduct reappraisals required under Act 1185 of 1999.[1] Under the contract, AMC agreed to use appraisers from the Assessor's office. The appraisers were compensated by the County, but AMC reimbursed the County for the cost of the appraisers' salaries and benefits. Additionally, the contract provided that if AMC had employment issues with any of the field appraisers that would warrant termination, AMC was to submit to the Assessor written notification of the intent to dismiss and allow ten working days for the appraiser to correct any deficiencies. If the deficiencies were not corrected, the appraiser would be turned back to the County.

On March 17, 2000, Jones received a letter notifying her that her performance was deficient. Thereafter, Lezlie Williamson, the project manager for AMC, wrote another letter indicating that Jones's work performance had improved; however, subsequent problems arose, and on June 27, 2000, Carolyn Walker, owner of AMC, notified Dianna Faucher, Crawford County Assessor, that AMC was terminating its relationship with Jones because of her inadequate job performance. Faucher, in turn, notified Jones by telephone that she could no longer work for AMC and also that there was no spot available for her in the Assessor's office. Jones then requested a grievance hearing.

A grievance hearing was held on July 31, 2000, before the Crawford County Quorum Court, sitting as the grievance committee. Upon reviewing the testimony and exhibits, the committee ordered that Jones be reinstated to her position at the Assessor's office. Faucher, however, stated that she did not have any available position for Jones and notified her, by letter, on August 2, 2000, that she was being laid off, effective August 4, 2000, in accordance

---

[1] Act 1185 changed the form and manner of reappraisals for all Arkansas counties, and under this act Crawford County was required to conduct an immediate reappraisal that was to be completed within two years, commencing January 1, 2000.

with the terms of the Crawford County Employee Handbook. Jones then requested a second grievance hearing, but her request was denied in a letter written by quorum court member and chairman of the grievance committee, Art Richmond. In his letter, Richmond stated that the employee handbook did not provide for a grievance hearing following a layoff.

Jones filed suit in the Crawford County Circuit Court against the County and Faucher, in her individual capacity, as well as her capacity as Assessor.[2] In her complaint, Jones alleged causes of action for breach of contract and wrongful termination, violation of the Arkansas Whistle-Blower Act, and outrage.

A jury trial was held on August 26, 28-29, 2003. At the conclusion of Jones's case, the County moved for a directed verdict on all claims. The trial court granted the motion with regard to her claim under the Whistle-Blower Act and her claim for outrage but submitted the claim for breach of contract to the jury. The jury returned a verdict in favor of Jones and awarded her damages in the amount of $149,370.00. Following the court's entry of judgment, the County filed a motion for judgment notwithstanding the verdict ("JNOV"), arguing that the jury's verdict was against the preponderance of the evidence. The motion was denied, as was a motion filed by Jones requesting an award of attorney's fees.

The County timely appealed the jury's verdict to the court of appeals, arguing that there was no evidence that the County terminated Jones in violation of the employee handbook. Specifically, the County argued that it, through its grievance committee, determined that Jones should be reinstated to the Assessor's office but that Faucher, acting in her individual capacity and without consulting any County official, violated the handbook in subsequently laying off Jones.

Jones cross-appealed, arguing that the trial court erred in granting the County's motion for directed verdict on the claims for violation of the Whistle-Blower Act and outrage. The court of appeals affirmed on direct appeal, concluding that Faucher could only terminate Jones in her capacity as Assessor. *Jones*, 91 Ark. App. 161, 209 S.W.3d 381. The court of appeals further reasoned that a

---

[2] Prior to trial, Jones dismissed her complaint against Faucher in her individual capacity.

county is bound by the actions of its lawfully constituted officers. In addition, the court of appeals affirmed the order of the trial court directing a verdict on the outrage claim and denying the motion for attorney's fees. *Id.* It reversed, however, the order directing a verdict on the claim under the Whistle-Blower Act. In so doing, the court of appeals held that the directed verdict could not be sustained on the premise that Jones did not report the wrongdoing to an "appropriate authority." *Id.* at 173, 209 S.W.3d at 390-91.

Following the court of appeals' decision, the County petitioned this court for review, arguing that the court of appeals erred in holding that the County could be held liable for Faucher's actions. The County further argued that the court of appeals misinterpreted the United States Supreme Court decision in *Monell v. Department of Social Servs. of the City of N.Y.*, 436 U.S. 658 (1978). In addition, the County argued that the court misinterpreted the whistle-blower statute and, thus, erred in reversing the trial court's grant of the directed verdict.

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Stewart Title Guar. Co. v. American Abstract & Title Co.*, 363 Ark. 530, 215 S.W.3d 596 (2005); *Ethyl Corp. v. Johnson*, 345 Ark. 476, 49 S.W.3d 644 (2001). Similarly, in reviewing the denial of a motion for JNOV, we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. *Id.* Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* It is not this court's place to try issues of fact; rather, this court simply reviews the record for substantial evidence to support the jury's verdict. *Id.* In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.*

### I. Direct Appeal

#### a. Jury Verdict

On appeal, the County argues that the jury's verdict was not supported by substantial evidence. Specifically, the County avers that it properly determined that Jones should be reinstated but that

Faucher, acting independently and without consulting any County official, determined that she did not have a job for Jones. Thus, according to the County, Faucher's actions in her individual capacity cannot be imputed to the County. Jones counters that there was sufficient evidence supporting the jury's verdict as she presented proof that Faucher did not follow the employee handbook in laying off Jones and that it was proper to impute liability to the County for Faucher's actions.

We begin our analysis by determining whether there was substantial evidence to support the jury's verdict that Jones was wrongfully discharged. This court has stated the general rule that "when the term of employment in a contract is left to the discretion of either party, or left indefinite, or terminable by either party, either party may put an end to the relationship at will and without cause." *Marine Servs. Unlimited, Inc. v. Rakes*, 323 Ark. 757, 763, 918 S.W.2d 132, 134-35 (1996) (quoting *City of Green Forest v. Morse*, 316 Ark. 540, 546, 873 S.W.2d 155, 158 (1994)). Stated another way, an employer may terminate the employment of an at-will employee without cause. *See Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002); *Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991); *Gladden v. Arkansas Children's Hosp.*, 292 Ark. 130, 728 S.W.2d 501 (1987). There are two basic exceptions to the at-will doctrine: (1) where an employee relies upon a personnel manual that contains an express · provision against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term. *Id.; see also Ball v. Arkansas Dep't of Community Punishment*, 340 Ark. 424, 10 S.W.3d 873 (2000).

The jury was instructed in this case that in order for Jones to prevail on her claim for wrongful discharge, she must prove:

1. The county's personnel manual or employee handbook set forth provisions to be followed by both parties.

2. That Crawford County failed to follow the guidelines set forth in the personnel manual or employee handbook after the plaintiff's termination; and

3. The plaintiff suffered damages as a result of the discharge.

The record reveals that the County adopted an "Employee Policy Handbook," which became effective on July 11, 2000.[3] The handbook states in relevant part:

> All County employees are permanent employees with a property right in their employment. Each County employee has a substantial expectancy of continued employment until the employee voluntarily resigns or "just cause" for reduction or removal of pay or position is proved by the County at a pre-deprivation hearing or a property interest hearing (a "grievance hearing") which will be provided if the affected employee requests a property right hearing in the time and manner required by this policy.

In addition, the handbook provides that an elected official or departmental supervisor may lay off an employee when necessary by reason of non-appropriation of funds or work, or by reason of a bona fide abolishment of or change in the duties of a position, or when the department is reorganized and the need for the position is eliminated. In discussing layoffs, however, the handbook states:

> No employee with permanent employee status is to be separated by lay off while there are extra help, temporary, seasonal or probationary employees serving in the department in the same or equal or lower-level position for which regular-status employee or employees are qualified and available to reassignment.
>
> In determining the order of lay off of employees with regular status, the elected official may consider, on a consistent an equitable basis, such factors as seniority (the length of a County's employee's continuous service with the County since the last date of hire), work record, conduct and qualifications.

Sharon Partain, a Justice of the Peace for Crawford County, testified concerning the adoption of the employee handbook. According to Partain, once AMC returned Jones to the Assessor's office, Faucher should have rehired her because of her seniority. Moreover, she stated that if there was not a position available, someone with less seniority should have been laid off. Partain also testified that Faucher admitted at the grievance hearing that she did not follow the proper procedures when dealing with Jones.

---

[3] This handbook replaced a previous policy ordinance originally adopted in 1993 and later amended.

Patti Hill, the Crawford County Clerk, testified that in 2000 there was one part-time person employed in the Assessor's office, who later became a full-time employee in April 2001.

Connie Byerle, an abstractor and data-entry clerk in the Assessor's office, testified that she was hired as a part-time employee in July 1988 and became a full-time employee in August 1999. According to Byerle, she was not aware of any full-time positions available in the Assessor's office at the time that Jones was laid off.

Jones testified and stated that she was hired in the Assessor's office in 1979 and was a level-three appraiser at the time that she was laid off. Jones admitted receiving a letter from Walker in March 2000 that her performance was deficient, but received a subsequent letter that her work had improved. Then, in July 2000, Jones asked for a couple of days off work and subsequently received a phone call from Faucher informing her that she was being laid off because AMC had returned her to the County, and the County had no positions available for her. According to Jones, at the time that she was laid off, there were temporary positions available in the Assessor's office.

Faucher testified about her recollection of calling Jones and informing her of the layoff. According to Faucher, she told Jones of possible job openings in Sebastian County. She also stated that she informed Jones that she could request a grievance hearing. Faucher stated that after the quorum court determined that Jones should be reinstated, she sent her a letter notifying her that she would be laid off because there were no positions available in her office at that time. Faucher admitted, however, that Byerle was still a probationary employee at the time Jones was laid off. According to Faucher, her staff would have been unhappy if she had laid off someone else or created a new position for Jones.

A review of the foregoing evidence demonstrates that there was sufficient evidence to support a determination that there was a violation of the employee handbook when Faucher chose to lay off Jones. Faucher admitted that there was a probationary employee working in the office at the time that Jones was returned to the County by AMC. Under the policy adopted by the County, an employee with less seniority or one on probationary status should have been laid off before Jones, who had over twenty years' seniority. Having determined that Faucher violated the written

policy of the County, we must now turn to the issue of whether Faucher's action can be imputed to the County.

According to the County, the action of Faucher in laying off Jones was one taken in her individual capacity and, as such, cannot create liability on behalf of the County. The County reiterates that it followed the proper procedure in that it provided Jones a grievance hearing and ordered that she be reinstated to her job. In support of its position, the County relies on a line of cases standing for the proposition that elected officials have the authority to hire and fire their employees. *See Karr v. Townsend*, 606 F.Supp. 1121 (W.D. Ark. 1985) (holding that it would violate the Arkansas Constitution for a quorum court to adopt a personnel policy that purported to restrict an executive officer's right to hire and fire his staff); *Horton v. Taylor*, 767 F.2d 471 (8th Cir. 1985) (holding that a resolution by the quorum court entitling county employees to a hearing prior to dismissal was a nullity since it conflicted with constitutional provisions granting a county judge the power to fire his employees). Moreover, in an attempt to distinguish its actions, the County cites to the United States Supreme Court's decision in *Monell*, 436 U.S. 658, for the proposition that a county government can be sued only when "the action that is alleged to be unconstitutional implements or executes a governmental policy statement or custom."

We are not persuaded by the County's argument or the cases it relies on in support of its argument. Each of the above-stated cases are easily distinguishable in that those cases involved actions alleging violations of the federal Civil Rights Act, 42 U.S.C. § 1983, whereas here the allegation is one for breach of contract. Moreover, it is patently unreasonable to hold that a county official, such as the assessor, when acting in her capacity as an elected official, could not create liability for the county by her actions. Obviously, Faucher's authority to lay off Jones stemmed directly from her role as County Assessor and, as such, her actions are imputed to the County. This reasoning comports with our prior decision that official-capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent. *See City of Marianna v. Arkansas Mun. League*, 291 Ark. 74, 722 S.W.2d 578 (1987) (holding that a suit against the mayor and city alderman was a suit against the city) (citing *Hughes*

*v. Blankenship*, 672 F.2d 403 (4th Cir. 1982); *Calkins v. Blum*, 675 F.2d 44 (2d Cir. 1982); *Wolf-Lillie v. Sonquist*, 699 F.2d 864 (7th Cir. 1983)).

Accordingly, we find no merit to the County's argument that the jury's verdict was against the preponderance of the evidence. Having so determined, we now turn to the issues on cross-appeal.

## II. Cross-Appeal

### a. Arkansas Whistle-Blower Act

Jones argues on cross-appeal that the trial court erred in granting the County's motion for a directed verdict on her claim under the Whistle-Blower Act. According to Jones, she submitted evidence that established that she reported violations to the appropriate authorities and that adverse action was taken against her as a result of that reporting. Specifically, Jones avers that the evidence demonstrated that she voiced concerns about wrongful, wasteful, or inappropriate acts of Faucher and AMC to Faucher and members of the quorum court prior to the time that she was laid off. The County argues to the contrary that a directed verdict was warranted because there was no evidence that Jones was a whistle-blower or that she made complaints to the appropriate authorities as required under the Act.

This court recently discussed the standard to be applied when reviewing a trial court's grant of a motion for directed verdict and stated:

> In deciding whether the grant of a motion for directed verdict was appropriate, appellate courts review whether there was substantial evidence to support the circuit court's decision. *See, e.g., Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003); *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 61 S.W.3d 835 (2001). A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *Mangrum v. Pigue*, 359 Ark. 373, 198 S.W.3d 496 (2004); *Curry v. Thornsberry*, 354 Ark. 631, 128 S.W.3d 438 (2003); *Mankey v. Wal-Mart Stores, Inc.*, 314 Ark. 14, 858 S.W.2d 85 (1993). Stated another way, a motion for a directed verdict should be granted only when the evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. *Curry*, 354 Ark. 631, 128 S.W.3d 438; *Congra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 150 (2000). Where the evidence is such

that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Howard v. Hicks*, 304 Ark. 112, 800 S.W.2d 706 (1990).

*Switzer v. Shelter Mut. Ins. Co.*, 362 Ark. 419, 432, 208 S.W.3d 792, 800-01 (2005).

Here, at the conclusion of Jones's case, the County moved for a directed verdict on the whistle-blower claim, arguing that there was no evidence to support a conclusion that Jones was a whistle-blower. The County further argued that Jones never made any complaints to the proper authorities prior to the time when the adverse action was taken against her. Jones countered that she had presented evidence that she complained to members of the quorum court. The trial court, without comment, granted the directed-verdict motion.

Public employees who report violations of law or waste of public funds to the appropriate authorities are afforded protection under the Whistle-Blower Act. A whistle-blower who is punished by a public employer may seek actual damages and injunctive relief. In order for Jones to prevail on her claim under the Act, she was required to establish, by a preponderance of the evidence, that she suffered an adverse action because she, or a person acting on her behalf, engaged or intended to engage in an activity protected under the Act. *See* Ark. Code Ann. § 21-1-604(c) (Repl. 1999). Pursuant to Ark. Code Ann. § 21-1-602(1) (Repl. 1999), an "adverse action" means to discharge, threaten, or otherwise discriminate or retaliate against a public employee in any manner that affects the employee's employment, including compensation. Under section 21-1-602(8), a whistle-blower is defined as:

> a person who witnesses or has evidence of a waste or violation while employed with a public employer and who communicates in good faith or testifies to the waste or violation, verbally or in writing, to one of the employee's superiors, to an agent of the public employer, or to an appropriate authority, provided that the communication is made prior to any adverse action by the employer.

Further, section 21-1-602(2)(A) provides that an "appropriate authority" includes:

> (i) A state, county, or municipal government department, agency, or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or waste; or

(ii) A member, officer, agent, investigator, auditor, representative or supervisory employee of the body, agency, or organization.

Here, Jones testified that she told Faucher about instances of waste after Faucher called her and informed her that she was being laid off. Jones further testified that she reported misdeeds to Giles Osborne, Doyle Johnson, and Partain. According to Jones, her conversations with Osborne and Johnson occurred prior to her grievance hearing. In addition, Partain testified that Jones made comments to her about problems in the Assessor's office but did so on the night of the grievance hearing.

■ The issue for this court to resolve is whether Jones's actions of reporting alleged misdeeds to quorum court members constituted reporting to the "appropriate authorities." Under Ark. Code Ann. § 14-14-502(a)(1) (Repl. 1998), the quorum court is vested with the legislative power of the county. Section 21-1-602(2)(A)(i) specifically provides that a county government is an appropriate authority. Moreover, section 21-1-602(2)(A)(ii) allows reporting to a member of a governing body. As such, the evidence submitted by Jones regarding her reporting of alleged misdeeds to quorum court members created a question of fact that should have been resolved by the jury.

We further note that prior to granting the motion for directed verdict, there was a discussion among counsel and the trial court as to whether the remedies available to Jones for her claims for breach of contract and violation of the Act would be the same. A review of the Whistle-Blower Act reveals, however, that it offers specific remedies including injunctive relief and reinstatement of employment and compensation and benefits. *See* Ark. Code Ann. § 21-1-605 (Repl. 1999).

In sum, the evidence supporting Jones's claim under the Whistle-Blower Act created a question of fact to be resolved by a jury; thus, it was error for the trial court to grant the County's motion for directed verdict. We, therefore, reverse on this point and remand for a new trial on Jones's claim under the Whistle-Blower Act.

### b. Tort of Outrage

As her second point on cross-appeal, Jones argues that it was error for the trial court to grant the motion for a directed verdict on her claim for outrage. The County argues to the contrary that

Arkansas takes a narrow view of outrage claims, and in this case there was simply no evidence supporting a claim for outrage. We agree with the County.

This court has held that in order to establish the tort of outrage, a plaintiff must prove the following four elements: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the defendant's actions were the cause of the plaintiff's distress; (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Templeton v. United Parcel Serv., Inc.*, 364 Ark. 90, 216 S.W.3d 563 (2005); *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997). This court takes a strict view in recognizing an outrage claim, particularly in the context of employment relationships. *Templeton*, 364 Ark. 90, 216 S.W.3d 563; *see also Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991); *Sterling v. Upjohn Healthcare Servs., Inc.*, 299 Ark. 278, 772 S.W.2d 329 (1989). In *City of Green Forest*, 316 Ark. at 542, 873 S.W.2d at 156, this court explained the reason for adopting a narrow view of outrage claims that arise out of the discharge of an employee:

> The reason is that an employer must be given considerable latitude in dealing with employees, and at the same time, an employee will frequently feel considerable insult when discharged. In this context we have written: "Because of the employer's right to discharge an at-will employee, a claim of outrage by an at-will employee cannot be predicated upon the fact of the discharge alone. However, the manner in which the discharge is accomplished or the circumstances under which it occurs may render the employer liable." *Harris v. Arkansas Book Co.*, 287 Ark. 353, 356, 700 S.W.2d 41, 43 (1985). In another employee discharge case, *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 244-45, 743 S.W.2d 380, 383 (1988), we wrote, "The recognition of the tort of outrage does not open the doors of the courts to every slight insult or indignity one must endure in life."

In fact, this court has held that a plaintiff met the standard for proving the tort of outrage in an employee–discharge situation in only one case, *Tandy Corp. v. Bone*, 283 Ark. 399, 678 S.W.2d 312 (1984). In that case, Tandy Corporation thought that Bone, the manager of one of its stores in Little Rock, might be stealing

money or merchandise. Tandy decided to look into the matter, and Bone's supervisor and two security officers came to the store to conduct an investigation of the losses. Bone was questioned at thirty-minute intervals throughout the day; however, Bone suffered from a personality disorder which made him more susceptible to stress and fear than a normal person. In fact, for three years before the incident, he had been taking a tranquilizer prescribed by his psychiatrist. According to Bone, the security men cursed him, threatened him, and refused to allow him to take his prescribed medication. He stated that he asked for permission to take his medication at least three times, but each time his request was refused. Bone was eventually taken to another location in Little Rock for the polygraph examination, and, while there, he hyperventilated. Bone attempted to return to work the next day, but was unable to do so. He was subsequently hospitalized for a week. In holding that the circuit court did not err in sending Bone's claim of outrage to the jury, we emphasized that the fact that the employer had notice of Bone's condition was the only basis for a jury question on the issue of outrage. *Id.*

■ Here, there was simply no evidence of conduct on the part of the County that rose to the level required to prove a tort of outrage. Jones testified about her mental distress following her layoff but never testified about actions by any County official that were so outrageous or egregious that support a cause of action for outrage. Accordingly, the trial court did not err in granting the County's motion for a directed verdict on this claim.

### c. Attorney's Fees

Finally, Jones argues that it was error for the trial court to deny her motion for an award of attorney's fees pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1999). That section allows for an award of attorney's fees for actions in a breach-of-contract case. The County counters that this is not a breach-of-contract case and, thus, an award of fees is not warranted.

■ It is not necessary to address the issue of whether Jones's claim was one for breach of contract because her motion seeking attorney's fees was not timely filed. This court held in *Norman v. Norman*, 347 Ark. 682, 66 S.W.3d 635 (2002), that a motion for fees filed more than fourteen days after entry of judgment was untimely under Arkansas Rule of Civil Procedure 54(e). In the instant case, it is undisputed that the judgment was

entered on September 30, 2003, but Jones did not file her fee request until October 31, 2003. Therefore, under this court's holding in *Norman,* Jones's fee request was untimely. The same result holds true even if the time is measured from the denial of the County's motion for JNOV because the fee motion was filed twenty-one days after the order denying the motion was entered.

As a final matter, Jones has filed a motion requesting an award of attorney's fees in connection with the work done in preparing a supplemental abstract and a supplemental addendum in response to the filing of the petition for review. The motion, which requests a total fee award of $612.50, plus costs of $141.37, was filed pursuant to Ark. Sup. Ct. R. 4-2(b)(1). We grant the motion for fees and costs.

Pursuant to Ark. Sup. Ct. R. 2-4(f), once this court grants a petition for review, a party may request permission to file a supplemental brief. Here, the County filed such a motion, which this court granted. However, the County proceeded to file a substituted brief, necessitating the filing of a supplemental abstract and addendum by Jones. We therefore grant her fees and costs in connection with the preparation of her supplemental materials.

Affirmed on direct appeal; affirmed in part, reversed in part on cross-appeal; court of appeals affirmed.

Motion for imposition of attorney fees and costs; granted.