2009 Ark. App. 143

**Armand CESENA, Appellant,**

v.

**Steve GRAY, Appellee.**

No. CA 08–830.

Court of Appeals of Arkansas.

March 4, 2009.

258

Paul D. Groce, Little Rock, for appellant.

Baker, Donelson, Bearman, Caldwell and Berkowitz, P.C. by: William P. Dougherty, Memphis, for appellee.

JOSEPHINE LINKER HART, Judge.

Armand Cesena argues on appeal that the Pulaski County Circuit Court erred when it granted Steve Gray's motion for summary judgment. Cesena had filed a lawsuit against Gray, asserting the torts of outrage and defamation; however, on appeal Cesena only pursues his outrage claim. We affirm.

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Templeton v. United Parcel Service, Inc.,* 364 Ark. 90, 216 S.W.3d 563 (2005). The burden of sustaining a motion for summary judgment is the responsibility of the moving party; however, once the moving party has established a prima facie entitlement to summary judgment, the nonmoving party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidence presented by the moving party in support of its motion leaves a material fact unanswered. *Id.* We view the evidence in the light most favor-

able to the nonmoving party, resolving all doubts and inferences against the moving party. *Id.*

 In order to establish the tort of outrage, the plaintiff must prove the following four elements: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the defendant's actions were the cause of the plaintiff's distress; (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Id.* Arkansas appellate courts have taken a strict view in recognizing an outrage claim, particularly where it is alleged in employment relationships. *See id.; Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991); *Sterling v. Upjohn Healthcare Servs., Inc.*, 299 Ark. 278, 772 S.W.2d 329 (1989). The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000). Precedent requires that we give the tort of outrage a "narrow view" and requires "clear-cut proof" to establish the elements in outrage cases. *Id.*

 We are obligated to first decide whether the conduct alleged in Cesena's complaint, taken as true, states a claim for the tort of outrage, for if Cesena has not stated sufficient facts to support a claim for outrage, any unresolved factual issues are simply irrelevant. *Hollomon v. Keadle*, 326 Ark. 168, 931 S.W.2d 413 (1996). Cesena is employed as a systems analyst at Arkansas Blue Cross and Blue Shield (ABCBS). Gray was the supervisor of the department to which Cesena was assigned. Gray also supervised Cesena's immediate supervisor, Derrick Flowers. The department was responsible for processing payments of Medicare claims for out-of-state entities who contracted with ABCBS for this service. The conduct alleged in Cesena's complaint took place entirely during working hours and was allegedly perpetrated by Gray and Flowers, who were ABCBS employees.

In his complaint, Cesena alleged four categories of conduct that he asserted were actionable. First, he stated that "for over a year Derrick Flowers repeatedly and angrily threatened Plaintiff that he was going to take Plaintiff out into the parking lot and kick his ass." Second, Cesena alleged, "On occasion when Plaintiff requested assistance from Defendant Gray to stop Derrick Flowers from subjecting him to threats of being taken out into the parking lot by Derrick Flowers and having his 'ass kicked,' Defendant Gray shoved his finger into Plaintiff's face and screamed, 'Do you want to see how tough I can be?'" He believed that this "threat" was significant because he was aware that Gray had previously sustained a broken leg in a fight with an ABCBS employee. Cesena claimed that Gray "informed Plaintiff that Derrick Flowers was an extension of Defendant Gray's authority," and that "it was reasonably assumed by Plaintiff that the threats of Derrick Flowers were the threats of Defendant Gray, which caused him to have fear of imminent harm of being beat up by one or the other or both." Third, Cesena alleged that on February 24, 2004, Gray terminated him for dishonesty.[1] Fourth, Cesena

---

1. Cesena was not actually fired. He contends that higher-level management at ABCBS intervened.

asserted that Gray defamed him by declaring him dishonest, incompetent, and "crazy," which he contended not only constituted defamation, but conduct that qualified as outrage as well. We hold that the conduct that Cesena alleges cannot support a claim for the tort of outrage because the conduct did not rise to the level of being extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

Even more egregious conduct in an employment setting was found by our supreme court to not constitute the tort of outrage. In *Smith v. American Greetings Corp., supra,* there was not only an angry confrontation by the plaintiff's direct supervisor, but actual physical violence. Moreover, the employer in that case actually discharged the plaintiff. Nonetheless, the supreme court held that the plaintiff had failed to establish a claim for the tort of outrage and upheld a dismissal of the complaint. *See also Hollomon, supra* (conduct involved death threats including making the employee aware that the perpetrator was armed with a handgun and suggestions that the employer had others murdered).

Likewise, Cesena's contention that he was subjected to defamatory and demeaning comments failed to support the tort of outrage in more egregious cases. In *Sterling v. Upjohn* ₅*Healthcare Services, Inc., supra,* the supreme court upheld the trial court's grant of summary judgment to the defendant, despite the plaintiff's employer's unfounded assertions that the plaintiff was drunk at work, the employer's attempts to undermine the plaintiff, and the employer's eventual violent rhetoric regarding the plaintiff. Similarly, in *Faulkner v. Arkansas Children's Hospital,* 347 Ark. 941, 69 S.W.3d 393 (2002), the plaintiff presented facts indicating strained working relationships, a deliberate attempt to undermine her authority, false accusations of shoddy work, false accusations and rumors of mental illness, and, eventually, her being placed on administrative leave. There, the supreme court affirmed the dismissal of the complaint, noting that the plaintiff had not alleged any conduct that was beyond all possible bounds of human decency and utterly intolerable in a civilized society so as to rise to the level of outrage. Accordingly, while Cesena repeatedly describes the conduct he endured as "outrageous," merely describing conduct as outrageous does not make it so. *Fuqua v. Flowers,* 341 Ark. 901, 20 S.W.3d 388 (2000).

We are aware of only two cases involving the tort of outrage that have been upheld on appeal that are even remotely analogous to the case at bar; however, those cases are readily distinguishable. In *Tandy Corp. v. Bone,* 283 Ark. 399, 678 S.W.2d 312 (1984), the supreme court sustained a jury verdict in a case where the employer thought that Bone, the manager of one of its stores in Little Rock, might be stealing either money or merchandise. Bone's supervisor and two security officers came to the store to conduct an investigation of the losses, and Bone was questioned at thirty-minute intervals throughout the day. According to Bone, ₆the security men cursed him, threatened him, subjected him to a polygraph exam, and refused to allow him to take his prescribed medication, despite knowing that he had been dependent upon that medication for three years. In holding that the circuit court did not err in sending Bone's claim of outrage to the jury, the supreme court emphasized that the basis for its holding was that it was for the jury to decide whether under the circumstances it was outrageous conduct for the employer to deny Bone his medication, knowing that Bone depended on it. The threats that Bone received were believed to not be

sufficient to sustain his outrage claim. Here, of course, the threats allegedly made by Gray and his purported confederate, Derrick Flowers, were the essence of Cesena's case.

The second case is *Hess v. Treece*, 286 Ark. 434, 693 S.W.2d 792 (1985), where a divided court affirmed the award of compensatory and punitive damages where the defendant, Hess, motivated by personal animosity, carried on a two-year campaign to cause plaintiff Treece's discharge from the Little Rock Police Force. During those two years, Hess personally and through paid informants kept Officer Treece under surveillance and repeatedly filed false reports with plaintiff's supervisors in the Little Rock Police Department, alleging official misconduct as often as twice a week.

While the alleged duration and repetitive nature of the conduct in *Hess* is analogous to the case at bar, we believe that the nature of the conduct makes *Hess* inapposite. First, *Hess* is not a case where the plaintiff and defendant had a supervisor/subordinate relationship, but rather one where the plaintiff's employment was affected by the conduct. Second, the false complaints made by Hess were calculated to spawn official police investigations by Treece's superiors. Hess also essentially stalked Treece, expanding the scope of the complained of conduct geographically and temporally to anywhere and anytime. Conversely, the conduct that Cesena complains of in the instant case was not intended to result in official police investigations and did not take place outside of the place of employment or outside of work hours.

Because we hold that the conduct complained of is not sufficiently extreme and outrageous as to support Cesena's outrage claim, we need not consider the disputed facts that existed after he answered Gray's motion for summary judgment.

Affirmed.

GLOVER and HENRY, JJ., agree.