CITY OF FORT SMITH *v.* Maril L. FINDLAY,
Debbie L. Findlay, and Simmons First Mortgage Corporation

CA 93-1391                                     893 S.W.2d 358

Court of Appeals of Arkansas
Division I
Opinion delivered March 1, 1995
[Rehearing denied April 5, 1995.]

*Dailey, West, Core, Coffman & Canfield*, by: *Robert W. Bishop*, for appellant.

*Sam Sexton, Jr.*, for appellees.

JOHN B. ROBBINS, Judge. This appeal involves an eminent domain action in which the jury awarded Maril and Debbie Findlay, appellees, $14,000.00 for the partial taking of their residential property in Fort Smith, Arkansas. Appellant raises seven points on appeal, three of which concern structural damage to appellees' house that appellees contend was caused by appellant's excavation. Because we agree with appellant that the jury was improperly allowed to consider the structural damage in awarding damages to appellees, we reverse and remand for a new trial.

In 1991, the City of Fort Smith, appellant, condemned a 4 1/2-foot-wide strip of appellees' property for drainage purposes. This strip was adjacent to an existing drainage easement which was located along the side and to the rear of appellees' lot. Appellant also acquired a temporary easement across appellees' driveway for construction purposes. Appellant deposited $985.00 for the taking, which it contended was the estimated compensation due appellees. Appellees answered and counterclaimed, stating that the actual value of the taking was $30,000.00 to $35,000.00.

The construction of the drainage project included excavation on appellees' property so that the city could install three 8-by-4-foot concrete box culverts. Appellees contended at trial that this excavation was eight feet deep and occurred within thirty inches of their house, causing the temporary loss of lateral support to their house, which, in turn caused the foundation of their house to separate from the wall. Appellees argued that this struc-

tural damage should be considered in determining the difference between the value of their property before the taking and the value after the taking, and an instruction was given and evidence admitted to that effect over appellant's objection. Appellant contended that these damages were not compensable, moved for a directed verdict, and objected to a jury instruction and the admission of any evidence concerning any alleged damage to appellees' house. The court, however, denied appellant's motions and overruled its objections. The jury then awarded appellees $14,000.00 in damages.

We first address appellant's points related to its argument that the trial court erred in allowing the jury to consider the alleged structural damage to appellees' house in assessing appellees' damages. When the taking is by the sovereign, the correct measure of damages is the difference in the fair market value of the entire tract immediately before and immediately after the taking. *Property Owners Improvement District 247* v. *Williford*, 40 Ark. App. 172, 176-77, 843 S.W.2d 862, 865 (1992). A landowner is entitled to recovery for damages done to his adjoining lands which ordinarily and naturally result from the taking and use of the right-of-way and is left to an action in tort against non-immune parties only if negligence is involved. *See Arkansas State Hwy. Comm'n* v. *Steed*, 241 Ark. 950, 957, 411 S.W.2d 17, 21 (1967). At trial, appellees argued that the damages to their house "inevitably or necessarily" flowed from the construction upon the easement and, therefore, they are entitled to receive compensation for these damages.

Appellant argues that there is no evidence that the structural damage appellees discovered after the excavation was caused by the City's excavation and that, even if such damage did occur, it was the result of negligence, for which the city cannot be held liable. The distinction between a negligent act and one that inevitably or necessarily flows from the construction of an easement was discussed by this Court in *Board of Commissioners of Little Rock Municipal Water Works* v. *Sterling*, 268 Ark. 998, 1001, 597 S.W.2d 850, 852 (Ark. App. 1980):

> Any damages arising from such actions by the contractor did not necessarily or reasonably flow from the taking of the easement. Damages from tortious actions are not a

proper element of damage in a proceeding for the condemnation of the easement. *Springfield & Memphis Railway Company* v. *Henry*, 44 Ark. 360 (1884).

In *Tri-B Advertising* v. *Ark. State Highway Commission*, 260 Ark. 227, 539 S.W.2d 430 (1976), the court quoted the general rule from 40 C.J.S. Highways § 212 as follows:

> However, the contractor, and not the highway authority, is liable for damages resulting from his own tortious acts in the performance of the contract, as where he is negligent, or commits an unauthorized trespass on the property off the right of way. Even though the highway authority may be immune from liability for damage, such immunity is not shared by the contractor.

Tort damages by an independent contractor are to be distinguished from damages that inevitably or necessarily flow from the construction of an improvement in keeping with the design of the condemnor. Such distinction is clearly made in *White* v. *Maddux, Special Administrator*, 227 Ark. 163, 296 S.W.2d 679 (1956), in which the court reiterated the well established law that the State, its political subdivisions and *quasi* public corporations are not liable in tort. Damages to land outside the easement which inevitably or necessarily flow the construction upon the easement, such as permanent flooding of land outside the easement by reason of structures placed on the easement in keeping with the design of the condemnor, results in an appropriation of land for public use outside the easement. Such damages are embraced within just compensation to which the landowner is entitled. *Board of Directors, St. Francis Levee District* v. *Morledge*, 231 Ark. 815, 332 S.W.2d 822 (1960). The damages outside the easement in the present case were not an appropriation of additional land to public use, but resulted from tortious acts of the contractor unauthorized by the appellant.

*Id.* at 1001-02, 597 S.W.2d at 852.

When the possibility of a cause of action for damages due

to an intentional act or to an inevitable result of an intentional act is eliminated, and that it the situation we have here, there remains only the possibility of an action in tort.

There are many laymen, lawyers and judges who believe that, in all fairness, the State, its political subdivisions and *quasi* public corporations such as improvement districts created by the State, should be liable for torts committed. But the law, holding otherwise, has been firmly established for many years.

*St. Francis Drainage Dist.* v. *Austin*, 227 Ark. 167, 172, 296 S.W.2d 668, 671 (1956). *See also Arkansas State Highway Comm'n* v. *Lasley*, 239 Ark. 538, 540, 390 S.W.2d 443, 444 (1965); *Wenderoth* v. *Baker*, 238 Ark. 464, 467-68, 382 S.W.2d 578, 580 (1964).

There was testimony at trial that, after the excavation, appellees discovered a loose brick in the side of their house next to the excavated area and that they also discovered a crack in the kitchen floor after the flooring had been removed. The only evidence produced, however, that these damages may have been caused by the excavation included the testimony of Maril Findlay, who testified that the excavation occurred approximately thirty inches from his house and the land next to his house literally sunk. John Libby, a certified real estate appraiser, also testified that the soil on appellees' property has a low bearing strength, which when coupled with extreme drouth or wet, causes a shrink-swell situation, which has an effect on construction and its durability.

Van Lee, director of engineering for appellant, who was called as a witness by appellees, testified that he did not anticipate settlement in excavating appellee's premises and that the crack he examined in appellees' house did not relate to settlement nor was it caused by excavation. He testified that the separation of the wall from the floor is not typical of what he would expect to see when a house settles because of loss of support and that he would expect them both to go down, together, the wall and the floor.

In reviewing the denial of a motion for a directed verdict, this court gives the proof its strongest probative force.

*Lazelere* v. *Reed*, 35 Ark. App. 174, 180, 816 S.W.2d 614, 618 (1991). Substantial evidence is that evidence which is of suffi-cient force and character that it will, with reasonable certainty and precision, compel a conclusion one way or another; it must force or induce the mind to pass beyond a suspicion or conjec-ture. *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 129, 817 S.W.2d 873, 874 (1991); *Newberry* v. *Johnson*, 294 Ark. 455, 458, 743 S.W.2d 811, 812 (1988). Consequently, a motion for directed verdict should be granted only if the evidence so viewed would be so insubstantial as to require a jury verdict for the party to be set aside. *Bice* v. *Hartford Accident & Indem. Co.*, 300 Ark. 122, 124, 777 S.W.2d 213, 214 (1989).

▪ Giving appellee's evidence its strongest probative force, we hold that the trial court erred in denying appellant's motion for directed verdict on the issue of the structural damages to appellees' house. Appellees contended at trial that their house settled because the appellant did not require the contractor to shore up the excavation. However, appellees have not shown that this alleged failure to shore up the excavation caused the dam-age to their house, what specifications were called for by the appellant, or that the contractor followed the appellant's plans and specifications. In sum, there was no evidence that showed the damages to appellant's house flowed from the taking.

▪ For this reason, we also agree with appellant that the trial court erred in giving Instruction No. 7A, which instructed the jury that "in considering the value of the remainder after the taking, you may consider damage, if any, done to the lands out-side the taking area, which damage inevitably or necessarily flows from, or was caused by, construction in the area taken by the city of Fort Smith." Instructions should be based on evidence in the case, and instructions stating only abstract legal propositions or submitting matters on which there is no evidence should not be given. *Newman* v. *Crawford Constr. Co.*, 303 Ark. 641, 645, 799 S.W.2d 531, 534 (1990); *Riddell & McGraw* v. *Little*, 253 Ark. 686, 692, 488 S.W.2d 34, 38 (1972). Here, not only was there no evidence produced to support the giving of this instruction, but the instruction was also erroneous in that it did not limit dam-age to that which inevitably or necessarily flowed from the con-struction, but also included the words "or was caused by, con-struction in the area taken . . . ." This instruction would include

damages for an action in tort against appellant or its agents. This clearly is not the law. When the possibility of a cause of action for damages due to an intentional act or to an inevitable result of an intentional act is eliminated, there remains only the possibility of an actionable tort. *St. Francis Drainage Dist.* v. *Austin*, 227 Ark. 167, 172, 296 S.W.2d 668, 671 (1956). Arkansas Code Annotated § 21-9-301 (Supp. 1993) provides in part that no tort action shall lie against a municipal corporation on account of the acts of its agents or employees. *65th Center, Inc.* v. *Copeland*, 308 Ark. 456, 466, 825 S.W.2d 574, 580 (1992); *see also Harrington* v. *City of Greenbrier*, 262 Ark. 773, 775, 561 S.W.2d 302, 304 (1978).

Appellant's final point relating to structural damage concerns the trial court's admission of photographs depicting the structural damage and the excavation for the box culverts. Because appellees failed to produce any evidence that the structural defects in their house were the inevitable or necessary result of the construction, we agree that these photographs were irrelevant and prejudicial and should have been stricken.

Appellant also contends that the trial court erred in allowing appellees' appraiser, John Libby, to repeat hearsay statements on direct examination. The statement in question concerned a statement in another appraisal that John Libby repeated in court. Libby testified that, in attempting to determine the condition of the property prior to the taking, he looked at a previous appraisal of appellees' property performed by another appraiser and that appraisal contained the statement "[n]o adverse conditions noted." Appellant contends that the purpose of this statement was to establish that certain physical defects in the house did not exist prior to the construction of the drainage project and, therefore, its admissibility over appellant's objection was clearly prejudicial. We disagree.

Rule 703 of the Uniform Rules of Evidence allows an expert to base his opinion on facts learned from others, despite their being hearsay, if they are the type reasonably relied upon by experts in the particular field in forming opinions. *See Dixon* v. *Ledbetter*, 262 Ark. 758, 761, 561 S.W.2d 294, 295-96 (1978). In *Arkansas State Highway Commission* v. *Schell*, 13 Ark. App. 293, 683 S.W.2d 618 (1985), this Court stated:

> The rule for admission of expert testimony does not depend on the relative certainty of the subject matter of testimony, but rather on the assistance given by the expert testimony to the trier of fact in understanding the evidence or determining a fact in issue. Ark. Unif. R. Evid. 702. Moreover, the relative weakness or strength of the factual underpinning of the expert's opinion goes to the weight and credibility, rather than admissibility.

*Id.* at 297. *See also Arkansas State Highway Comm'n* v. *Russell*, 240 Ark. 21, 23, 398 S.W.2d 201, 202 (1966).

Here, John Libby testified that he looked at several appraisals of the property to determine its condition prior to the taking for determining its market value. The condition of the property prior to the taking was relevant to appellees' damages, and we cannot say the admission of this testimony was in error.

Appellant's fifth point claims the trial court erred in admitting evidence of the inconvenience caused appellees while the construction on the easement was in progress. The construction involved excavation of an area across appellees' driveway that prevented them from using their driveway or entering and exiting their house from the front. Although appellee Maril Findlay testified that he only lost the use of his driveway for a couple of days, the court allowed appellees to introduce photographs showing the construction in progress and the fact that they could not get in and out of their house, holding that the question of inconvenience would be one for the jury.

Appellees in their brief admit that this is not a case of a temporary inconvenience, but a case in which a temporary easement was taken for a specific purpose. A temporary easement is valued as the fair rental value of the property for the time that it is used. *Loyd* v. *Southwest Utils. Corp.*, 264 Ark. 818, 822, 580 S.W.2d 935, 936 (1979). *See also Property Owners Improvement Dist. No. 247* v. *Williford*, 40 Ark. App. at 176-80, 843 S.W.2d at 864-67. Here, evidence was presented to the jury concerning the rental value of the temporary easement, and the jury was instructed in this regard. The photographs were not relevant to the property's fair rental value and should have been excluded.

For its sixth point, appellant argues that the trial court erred in allowing the jury to view a videotape appellees made after the construction of the easement had been completed. Appellant argues that this video has no relevance to this lawsuit and, therefore, serves no valid purpose except to prejudice the jury by showing the existence of flooding and of a dangerous condition. We agree. The video shows only the conditions that existed after the taking and gives the jury no basis for comparing the drainage conditions before and after the taking. Furthermore, a portion of the video focuses on a drainage culvert located across the street from appellees' home that is not part of this project and therefore would only serve to confuse the jury.

For appellant's final point, it contends the trial court erred in admitting evidence that the original developers of the area were permitted to build in the area without improving the drainage. Although we find no prejudice from the inclusion of this evidence, we agree that it is not relevant to the difference in market value of the entire tract immediately before and immediately after the taking and should be excluded.

Reversed and remanded.

JENNINGS, C.J., and ROGERS, J., agree.