Marvin and Connie DEBOER *v.* ENTERGY ARKANSAS, INC., and West Tree Service, Inc.

CA 02-1324                                    109 S.W.3d 142

Court of Appeals of Arkansas
Division I
Opinion delivered June 4, 2003

*Stephen D. Ralph*, for appellants.

*Friday, Eldredge & Clark*, by: *Ellen M. Owens*, for appellee Entergy Arkansas, Inc.

OLLY NEAL, Judge. This inverse condemnation case is before us a second time, having previously been dismissed for lack of a final order. That deficiency has been remedied, and we now have jurisdiction to decide the case. Appellees Entergy, an electric utility, and West Tree Service, its contractor, cut trees on appellants' land for the purpose of placing a power line. Appellants, who had not given permission for the cutting, filed suit seeking damages. The circuit court awarded them $1,200, plus $400 in costs. Appellants consider that award insufficient and bring this appeal. We affirm.

Appellants purchased Lots 6 and 7 on Northridge Drive in Faulkner County for $8,000 in 1989. The lots, which comprise 2.28 acres, are heavily wooded and run uphill from south to north. Appellants' home is situated at the top of the hill, primarily on Lot 7.

To appellants' west is Lot 5, owned by Samuel Miller. In July of 1996, Miller was building a house on Lot 5, and he contacted Entergy to request electrical service. Entergy sent out a crew from West Tree Service in August 1996 to cut trees in preparation for placement of the service line. On the morning of August 13, the appellants heard the sound of chainsaws. Upon investigating, they discovered that West was cutting trees on their Lot 6, which abuts Miller's Lot 5. Appellants asked West to stop, which West did temporarily. Appellants contacted Entergy and were told to get a survey done to prove that the cut trees were on their property. They procured the survey, but West and Entergy continued their operations, cutting approximately forty-five trees on the southwestern part of Lot 6. The area of the cut measured approximately 16-feet wide by 127-feet long, according to appellant Connie DeBoer's estimate.

Appellants filed suit against Miller, West, and Entergy, seeking damages for the wrongful cutting of trees and breach of a covenant, and seeking the abatement of a nuisance created by the placement of a utility pole halfway up the hill, which allegedly obstructed appellants' view of a nearby lake. Miller was eventually dismissed from the case, and the breach of covenant and nuisance

counts were resolved against appellants by way of summary judgment. All that remained for trial was the damages portion of the case against Entergy and West regarding the cut trees.

Prior to trial, Entergy filed a motion in limine to prohibit the appellants from introducing evidence of the replacement value of the cut trees and to prohibit them from introducing evidence that would support an award of double damages under Ark. Code Ann. § 15-32-301 (Repl. 2000), which provides that a person who "knowingly" cuts down trees owned by another shall be liable to the owner for double the value thereof. Entergy argued that appellants' exclusive remedy was contained in the inverse condemnation statute, Ark. Code Ann. § 18-15-102 (1987), and that under that statute, appellants were entitled only to the fair market value of the property taken. The court agreed with Entergy and granted the motion, ruling that trial testimony regarding damages would be limited to the fair-market value of the property used by Entergy.

At trial, appellants proffered an appraisal by arborist Bill Long that assessed the replacement value of the cut trees at $12,655. However, the court relied on the measure of damages used by Entergy's expert, Wayne Coates. Coates assessed the value of Lot 6 before the cutting as $24,750, and after the cutting as $23,550, a difference of $1,200. He also opined that, because the damaged area was "off to the side," there was no further damage to the remainder of appellants' property. Based on this testimony, the trial court awarded appellants $1,200, plus $400 in costs. Appellants now appeal that ruling.

Appellants argue that although Entergy was authorized, pursuant to the power of eminent domain, to appropriate private property for its use, its appropriation in this case was excessive and not necessary for delivering electrical power to Samuel Miller. They contend that, as a result, they should have been permitted to recover the replacement value of their trees. We disagree.

■ ■ An electric utility may exercise the power of eminent domain by filing a condemnation petition in court, and, in that proceeding, damages for the taking are assessed. *See* Ark.

Code Ann. § 18-15-503(b) and (c), and § 18-15-504(a) (Supp. 2001). However, if the utility takes an owner's land but does not file an eminent domain proceeding, the owner may initiate his own inverse condemnation action. *See Robinson v. City of Ashdown*, 301 Ark. 226, 783 S.W.2d 53 (1990) (stating that inverse condemnation is a cause of action to recover the value of the property which has been taken in fact although not through eminent domain procedures.) Inverse condemnation actions against utilities are governed by Ark. Code Ann. § 18-15-102 (1987). Subsection (b) of that statute provides that the landowner's measure of recovery shall be the same as that governing proceedings by corporations for the condemnation of property. In other words, the same measure of damages is used whether the proceeding is an eminent domain action filed by the utility or an inverse condemnation action filed by the landowner.

■■■■ The measure of damages in a condemnation case depends on whether the land is taken by the sovereign or by another entity. When the sovereign exercises its right to take a portion of a tract of land, the proper measure of compensation is the difference in fair market value of the entire tract immediately before and after the taking. *Property Owners Improvement Dist. v. Williford*, 40 Ark. App. 172, 843 S.W.2d 862 (1992). When another entity such as a railroad, telephone company or, in this case, an electric company, exercises the right of eminent domain, just compensation is measured by the value of the portion of the land taken plus any damage to the remaining property. *See id*; *see also Arkansas La. Gas Co. v. Howell*, 244 Ark. 86, 423 S.W.2d 867 (1968); *Arkansas La. Gas Co. v. James*, 15 Ark. App. 184, 692 S.W.2d 761 (1985). Fault has nothing to do with eminent domain or inverse condemnation; it is the taking of property that is actionable. *See Thompson v. City of Siloam Springs*, 333 Ark. 351, 969 S.W.2d 639 (1998). Further, recovery under the inverse condemnation statute is exclusive. *Missouri & N. Ark. RR. Co. v. Chapman*, 150 Ark. 334, 234 S.W. 171 (1921). Additionally, the value of trees destroyed by a utility in constructing a right-of-way is not a separately compensable item of damage. *See Cramer v. Arkansas Okla. Gas Corp.*, 316 Ark. 465, 872 S.W.2d 390

(1994); *Arkansas La. Gas Co. v. Maxey*, 242 Ark. 698, 415 S.W.2d 52 (1967).

■ In light of the above authorities, we conclude that appellants' remedy for Entergy's taking of their property was governed exclusively by the inverse condemnation statute, which permits them to recover only the value of the portion of the land taken plus any damage to remaining property; the statute does not permit them to recover the replacement value of their trees. Therefore, we affirm the trial court's decision not to consider the replacement value of the trees in assessing appellants' damages.[1]

■ Appellants also argue that, even if they cannot recover the replacement value of their trees from Entergy, they should be able to do so from West Tree Service. In support of their argument, they cite *City of Fort Smith v. Findlay*, 48 Ark. App. 197, 893 S.W.2d 358 (1995). There, we recognized that a condemnor's contractor might be liable for tort damages under some circumstances, but we also recognized that tort damages by an independent contractor should be "distinguished from damages that inevitably or necessarily flow from the construction of an improvement in keeping with the design of the condemnor." *Id.* at 202, 893 S.W.2d at 361. According to *Findlay*, if damages to land *outside the easement* inevitably flow from the condemnation, they are merely an additional appropriation of land, and such damages are embraced in the just-compensation concept. It is logical then that damages on the right-of-way itself are also embraced within the just-compensation concept. Thus, even in an action against West, appellants would be entitled only to the measure of damages under the eminent domain/inverse condemnation laws, *i.e.*, the difference in the before and after values of the land taken.

Affirmed.

GLADWIN and ROBBINS, JJ., agree.

---

[1] We note that the trial judge did not, technically speaking, use the correct measure of damages in this case. He used the before and after value of the entire tract, as if the defendant were a sovereign, rather than the value of the portion of the land taken. However, this is not raised as an issue on appeal, so we do not address it.