ONE NATIONAL BANK, as Administrator of the Estate of Lorrie Ann Kaz, Deceased *v.* Richard F. POPE, American Manufacturers Mutual Insurance Company, and Wesley United Methodist Church of Pine Bluff, Arkansas

06-1497 272 S.W.3d 98

Supreme Court of Arkansas
Opinion delivered January 24, 2008

*Eubanks, Baker, & Schulze*, by: *Darryl E. "Chip" Baker* and *J. G. "Gerry" Schulze*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Troy A. Price*, for appellees.

PAUL E. DANIELSON, Justice. Appellant One National Bank, as Administrator of the Estate of Lorrie Ann Kaz, deceased,

appeals from the judgment entered in its favor and against appellees Richard F. Pope, American Manufacturers Mutual Insurance Company, and Wesley United Methodist Church of Pine Bluff, Arkansas (collectively "American Manufacturers"). The Estate's sole point on appeal is that the circuit court erred in granting American Manufacturers's directed-verdict motion on the Estate's claim for loss-of-life damages under Ark. Code Ann. § 16-62-101(b) (Repl. 2005). American Manufacturers cross-appeals, arguing that the circuit court erred in denying its motion for judgment as a matter of law, which alleged that there was no evidence that Mr. Pope was acting within the course and scope of his employment at the time of the accident in which Ms. Kaz was killed. We reverse and remand on direct appeal and affirm on cross-appeal.

This case stems from a motor-vehicle accident, which occurred on August 18, 2001, in Cleburne County, Arkansas, on State Highway 5. On that day, Richard F. Pope, then the minister of Wesley United Methodist Church in Pine Bluff, was returning to Pine Bluff following a fishing trip. The fishing trip took place at the home of one of the church's members and her husband, which was near the White River, and included several high-school-age boys, in the form of a church youth outing. One of the boys, Kevin Owens, was riding with Mr. Pope, when Mr. Pope's car crossed over the double-yellow line, hit Ms. Kaz's car, and caused the deaths of three persons, Ms. Kaz and two of her daughters, Dusti Lee Sherman and Julianne Dohrman.

On April 17, 2003, the estates of all three decedents filed a complaint against American Manufacturers, alleging that Mr. Pope "was negligent, which was the proximate cause of the damages and injuries sustained by [the Estate]."[1] The estates sought funeral expenses, loss-of-life damages, and mental-anguish damages, on behalf of the beneficiaries, as well as economic damages on behalf of Ms. Kaz's son, Donald Scott "D.J." Sherman. Each of the defendants answered, and, ultimately, the matter went to trial. During the course of the trial, American Manufacturers moved for a directed verdict on the claim for loss-of-life damages as to Ms. Kaz, and the circuit court granted its motion.

---

[1] The original complaint named "First United Methodist Church" as a defendant; however, in the amended complaint, filed May 8, 2003, the Estate correctly named "Wesley United Methodist Church" as a defendant.

The matter proceeded, and at the conclusion of the trial, the jury rendered its verdict on interrogatories. On September 21, 2006, the circuit court entered its judgment. The jury had found that there was negligence on the part of Mr. Pope, which was a proximate cause of damages, that Mr. Pope was not an independent contractor at the time of the accident, and that Mr. Pope was acting within the course and scope of his employment with Wesley United Methodist Church at the time of the accident. Accordingly, judgment was entered in the following manner:

AS TO THE ESTATE OF LORRIE ANN KAZ, the court enters judgment in favor of One National Bank as Administrator of the Estate in the amount of $1,440 in favor of the estate [for funeral expenses], $40,000 in favor of Amanda Boske [Ms. Kaz's surviving daughter, for mental anguish], and $100,000 in favor of D.J. Sherman [Ms. Kaz's surviving son, for mental anguish].

AS TO THE ESTATE OF DUSTI SHERMAN, the court enters judgment in favor of One National Bank as Administrator of the Estate in the amount of $1,001,585 in favor of the estate [for loss of life and funeral expenses], $20,000 in favor of Amanda Boske [Dusti's surviving sister, for mental anguish], and $150,000 in favor of D.J. Sherman [Dusti's surviving brother, for mental anguish].

AS TO THE ESTATE OF JULIANNE DOHRMAN, the court enters judgment in favor of One National Bank as Administrator of the Estate in the amount of $1,001,585 in favor of the estate [for loss of life and funeral expenses], $20,000 in favor of Amanda Boske [Julianne's surviving sister, for mental anguish], and $150,000 in favor of D.J. Sherman [Julianne's surviving brother, for mental anguish].

On October 5, 2006, American Manufacturers filed a motion for judgment notwithstanding the verdict and, in the alternative, motion for new trial. In it, it alleged that the three estates failed to present sufficient evidence at trial that Mr. Pope was acting within the scope of his employment with the church at the time of the accident.[2] The three estates responded, and on October

---

[2] The motion further asserted that the circuit court erred in excluding "the Book of Discipline and paragraph 141 of the Book of Discipline." However, American Manufacturers does not raise that argument in its cross-appeal.

17, 2006, the circuit court entered its order denying the motion, finding that there was substantial evidence that Mr. Pope was acting in the course and scope of his employment with the church at the time of the accident.[3] The Estate filed a timely notice of appeal, and American Manufacturers timely filed its notice of cross-appeal. We turn then to the instant appeal.

The Estate argues that the issue presented by this case is simple: what evidence is required to submit the loss-of-life element of damage to a jury? It avers that section 16-62-101(b) only requires proof that a living person died from the wrongful acts of another to trigger the element of damage and that any additional evidence a deceased person's estate presents is simply to provide a jury a sound basis for increasing its evaluation. In the instant case, the Estate maintains, the jury could have reasonably inferred from the evidence presented that Lorrie Kaz loved life and placed a value on her own life, and, therefore, the circuit court erred in failing to submit the Estate's claim for loss-of-life damages to the jury. American Manufacturers counters that without some evidence of how a particular decedent saw his or her life, a jury is left to conjecture and speculation. It submits that it is "the quality of life, not the fact of life, that paves the way to recovery" of loss-of-life damages.

In deciding whether the grant of a motion for directed verdict was appropriate, appellate courts review whether there was substantial evidence to support the circuit court's decision. *See Crawford County v. Jones*, 365 Ark. 585, 232 S.W.3d 433 (2006). A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *See id.* Stated another way, a motion for a directed verdict should be granted only when the evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. *See id.* Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *See id.*

Arkansas's survival statute specifically provides that a decedent's estate may recover damages for the decedent's loss of life:

---

[3] In addition, the circuit court found that it did not err in excluding the Book of Discipline, but, even if it did, the error was cured when American Manufacturers was permitted to read that portion of the Book of Discipline to the jury.

(b) In addition to all other elements of damages provided by law, a decedent's estate may recover for the decedent's loss of life as an independent element of damages.

Ark. Code Ann. § 16-62-101(b) (Repl. 2005). In *Durham v. Marberry*, 356 Ark. 481, 156 S.W.3d 242 (2004), we found the language of section 16-62-101(b) to be clear and unambiguous and held that it was not necessary for a decedent to live for a period of time between injury and death in order to recover such damages. We further distinguished between loss-of-enjoyment-of-life damages and loss-of-life damages, noting that the former contemplates "damages for loss of the enjoyment of life that are pre-death," while the latter loss-of-life damages "only begin accruing at the point when life is lost, at death[.]" 356 Ark. at 491-92, 156 S.W.3d at 247-48. In addition, we established that "[l]oss-of-life damages seek to compensate a decedent for the loss of the value that the decedent would have placed on his or her own life." *Id*. at 492, 156 S.W.3d at 248. In this case, we are confronted with the question of what proof an estate must present in order to seek an award of loss-of-life damages. The issue is one of first impression for this court.

While we have not specifically addressed this question, we did, in *Durham*, cite to and discuss Connecticut's provision for "just damages:"

"Just damages" include (1) the value of the decedent's lost earning capacity less deductions for her necessary living expenses and taking into consideration that a present cash payment will be made, (2) compensation for the destruction of her capacity to carry on and *enjoy life's activities* in a way she would have done *had she lived*, and (3) compensation for pain and suffering.

*Id*. at 490, 156 S.W.3d. at 247 (quoting *Katsetos v. Nolan*, 170 Conn. 637, 657, 368 A.2d 172, 183 (1976) (internal footnote omitted) (emphasis added)). *See also* Howard W. Brill, *Arkansas Law of Damages* § 34:1B (5th ed. 2004). We observed that such damages "were damages for the loss of the decedent's life, which, in turn, led to the destruction of her ability to carry on life's activities." 356 Ark. at 491, 156 S.W.3d at 247.

The United States District Court for the Eastern District of Arkansas has also examined loss-of-life damages pursuant to section 16-62-101(b). In *McMullin v. United States*, 515 F. Supp. 2d

914 (E.D. Ark. 2007), the District Court observed, in reviewing our *Durham* decision, that our distinction between damages for loss of enjoyment of life and loss-of-life damages could not "be interpreted as expressing any view on the parameters of evidence that may be relevant to establish those different claims." 515 F. Supp. 2d at 926. It further found that there was "nothing in the opinion that would negate an argument that the same type of evidence might be used to support both claims." *Id.* It then concluded that many types of evidence may be presented as evidence of loss-of-life damages:

> So, this Court does not read *Durham* as establishing a completely separate, subjective standard in contrast to Connecticut's approach. On the contrary, *Durham* suggests many types of evidence that may properly be admitted and relied upon to establish how to place a value on the deceased's life.

*Id.* at 927. The District Court was correct in its review.

■ We hold that an estate seeking loss-of-life damages pursuant to section 16-62-101(b) must present *some* evidence, that the decedent valued his or her life, from which a jury could infer and derive that value and on which it could base an award of damages. While the Estate urges that mere proof of life and then death is sufficient, we disagree.[4] That being said, we do not suggest that the evidence required be limited to direct evidence, as circumstantial evidence may certainly be used as well.

■ That brings us to the evidence presented in the instant case. However, we must first address American Manufacturers's argument raised during oral arguments that because the Estate "invited" the circuit court to ignore all of the testimony by Ms. Kaz's surviving children when ruling on the directed-verdict motion, we are prevented from considering their testimony in determining whether there was substantial evidence to support a

---

[4] In its arguments to this court, the Estate urged that because the General Assembly enacted Act 1516 of 2001, amending the survival statute to allow damages for loss of life, during the same session that it enacted Act 1265 of 2001, allowing recovery for the wrongful death of a viable fetus, the General Assembly must have intended that the quantum of proof be the same for both. It suggests that because one would be unable to present evidence regarding the life or lifestyle of a fetus, the General Assembly did not intend such evidence to be required as proof for loss-of-life damages. We fail to see the analogy.

jury verdict. We do not agree. Our review of the record reveals that during the course of the directed-verdict motion, the parties were in dispute as to whether character evidence relating to Ms. Kaz was presented in support of the Estate's claim for loss-of-life damages and whether American Manufacturers should be able to present character evidence that it thought counteracted that of the Estate. The circuit court observed that the Estate had brought character evidence in, to which the Estate responded that the testimony that Ms. Kaz was a good mother was submitted solely to show the children's relationships with their mother and "what they thought of her." The circuit court subsequently ruled that "based on what I've heard and representation of plaintiff's counsel that that was submitted for purposes of the mental anguish of the . . . surviving children, then I will grant the motion to directed verdict." We do not construe the Estate's statement to the circuit court to be that *all* of the evidence it presented went only to the mental anguish of the children, but that the evidence relating to whether Ms. Kaz was a good mother went only to the children's mental anguish. Consequently, we are not precluded from examining the remainder of the testimony and evidence presented.

■ Here, the testimony clearly demonstrated that Ms. Kaz was a mother of four, as well as a grandmother, that she was close to her oldest daughter, that she had worked as a waitress, that she lived with a man for whom she had come to Arkansas, and that, at the time of the accident, she was on her way to a family get-together. While not direct evidence with respect to the value Ms. Kaz would have placed on her life, we hold that this circumstantial evidence was substantial evidence from which the jury could have inferred the value she would have placed on her life and on which the jury could have awarded the Estate loss-of-life damages. Accordingly, because there was substantial evidence from which a jury could have determined that the Estate was entitled to loss-of-life damages, we hold that the circuit court erred in granting American Manufacturers's motion for directed verdict. For that reason, we reverse and remand on this issue.

For its cross-appeal, American Manufacturers argues that there was no evidence that Mr. Pope was acting within the course and scope of his employment when the accident occurred, and, for that reason, the circuit court should have granted its motion for judgment notwithstanding the verdict. It asserts that while Mr. Pope may have been "acting in the cause of Christ," there was still

required "some specific advancement of the goals of the enterprise — not just acts in line with its philosophy." The Estate responds that substantial evidence was presented that supports the conclusion that Mr. Pope was transporting a member of the church youth group home from a church fishing trip at the time of the accident. It submits that Mr. Pope's attendance at a church youth event was part of his employment, whether it was required or not, and was unquestionably in furtherance of his employer's interests.

A judgment notwithstanding the verdict is not proper where there is substantial evidence to support the jury verdict. *See Ellis v. Price*, 337 Ark. 542, 990 S.W.2d 543 (1999). On appeal, we review the evidence and all reasonable inferences deducible in the light most favorable to the party against whom the judgment notwithstanding the verdict may be rendered. *See id.* Whether the evidence is substantial is a question of law. *See id.* Substantial evidence means evidence that is of sufficient force and character that it will compel a conclusion one way or another. *See id.* The evidence must force the mind beyond mere suspicion or conjecture. *See id.*

■ There was clearly substantial evidence to support the jury's verdict that Mr. Pope was acting within the course and scope of his employment with the church at the time of the accident. Mr. Pope testified that, at the time of the accident, he was the pastor of Wesley United Methodist Church. He testified that he was salaried and that the duties of a preacher included preaching and visiting the sick, administering the policies of the church, leading services, and "administering" to the different groups of the church, including the women's group, the men's group, and the youth group. He testified that he was responsible for doing what a youth minister does at a church and that he had help from the parents.

In addition, Mr. Pope testified that he had mentioned the fishing trip at a youth meeting and that the trip "was partially a church trip." Finally, he testified that, if he was able, he was expected to go on the trip and that his approval was generally necessary for such a trip:

> COUNSEL FOR THE ESTATE: Okay. Now, were you expected to come to the — to this fishing trip?
>
> MR. POPE: As — as a friendly and that type expectation, not a demanding expectation. But, sure if I'm able to — yeah.

. . . .

DEFENSE COUNSEL: Was your approval a necessary ele-
ment of this trip to Mr. Strong's house?

MR. POPE: 95 percent — he could have done it without
my approval, but not likely. You're the church pastor, it
goes through you.

DEFENSE COUNSEL: If he's inviting young men from the
church; is that why you're saying that?

MR. POPE: Yeah, I mean —

Based on the foregoing, we cannot say that the circuit court erred in
denying American Manufacturers's motion for judgment notwith-
standing the verdict. Therefore, we affirm on cross-appeal.

Reversed and remanded on direct appeal; affirmed on
cross-appeal.