2011 Ark. 11

**Ricky and Christine POPE, Appellants**

**v.**

**Michael OVERTON and Entergy Arkansas, Inc., Appellees.**

No. 10–63.

Supreme Court of Arkansas.

Jan. 20, 2011.

Gary Holt & Associates, P.A., by: Bree-an Walas, Little Rock, for appellants.

Wood, Smith, Schnipper, Clay & Vines, Hot Springs National Park, by: Don M. Schnipper, and Janan Honeysuckle, Entergy Arkansas, Inc., for appellees.

PAUL E. DANIELSON, Justice.

Appellants Ricky and Christine Pope appeal from the order and judgment of the Hot Spring County Circuit Court granting a directed verdict in favor of appellee Entergy Arkansas, Inc.; granting a directed verdict in favor of appellee Michael Overton to set the maximum amount of damages for the Popes' conversion claim against him at $188.95, trebled; and dismissing the Popes' trespass claim and cause of action against Overton and Overton's claim and cause of action against the Popes following a jury verdict. Additionally, the Popes appeal from the circuit court's order awarding costs pursuant to Ark. R. Civ. P. 68 to Overton. We affirm in part and reverse in part.

The relevant facts are these. In September 2004, the Popes purchased 31.5 acres of land in Hot Spring County, Arkansas, for $57,500. They purchased the property as an investment, as well as for their own personal, recreational use. In 2007, the Popes listed their property for sale. The property was listed for $159,000, but was later reduced to $129,000.

After the Popes' property was listed, Overton, the Popes' neighbor, contacted Entergy to request that electrical service be extended to his property. Entergy and Overton agreed upon a route across the Popes' property, and Entergy informed Overton that he needed to acquire a right-of-way easement from the landowner. Overton never obtained the right-of-way from the Popes and proceeded to hire a contractor to clear the Popes' property.

When the Popes learned that the power lines had been put through their property, they filed suit against Entergy and Overton. The Popes then moved for summary judgment against Entergy on the issue of liability, which was denied by the circuit court. The case proceeded to trial and, at the close of the Popes' case, Entergy moved for directed verdict. The circuit court granted the motion.

Overton also moved for directed verdict after the close of the Popes' case, but his motion was denied. At the close of all the evidence, Overton again moved for directed verdict and stipulated to liability on the conversion claim and to an award of damages in the amount of $188.95, trebled, which the court granted. The trespass claim was submitted to the jury and, upon the verdict of the jury, the trespass claim was dismissed with prejudice.

Judgment was entered on September 25, 2009. The Popes filed a timely notice of appeal. Entergy and Overton then filed a joint petition for costs. The Popes objected to any costs being awarded under Rule 68 of the Arkansas Rules of Civil Procedure. However, on November 30, 2009, the court awarded Rule 68 costs to Overton. The Popes supplemented their notice of appeal and included the court's judgment for costs. The circuit court denied the Popes' objection to the entry of the proposed judgment for costs and, therefore, the Popes supplemented their notice of appeal to include that denial. We now reach the merits of the Popes' appeal.

The Popes first argue that the circuit court applied the wrong standard for damages to be recovered by a plaintiff in an inverse condemnation proceeding and, therefore, erred in granting Entergy's motion for directed verdict. Entergy responds that the Popes failed to provide facts to support their contented value of their property and failed to provide evidence of the value of the land taken or any damage to the remainder of their property. Therefore, Entergy contends, the circuit court did not abuse its discretion in granting Entergy's motion for directed verdict. We agree.

In deciding whether the grant of a motion for directed verdict was appropriate, appellate courts review whether there was substantial evidence to support the circuit court's decision. *See One Nat'l Bank v. Pope,* 372 Ark. 208, 272 S.W.3d 98 (2008). A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *See id.* Stated another way, a motion for directed verdict should be granted only when the evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. *See id.* Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *See id.*

An electric utility may exercise the power of eminent domain by filing a condemnation petition in court, and, in that proceeding, damages for the taking are assessed. *See* Ark.Code Ann. § 18–15–503(b) and § 18–15–504(a) (Repl.2003). However, if the utility takes an owner's land but does not file an eminent domain proceeding, the owner may initiate his own inverse condemnation action. *See DeBoer v. Entergy Arkansas, Inc.,* 82 Ark. App. 400, 109 S.W.3d 142 (2003). Inverse condemnation is a cause of action to recover the value of the property which has been taken in fact, although not through eminent domain procedures. *See id.* (citing *Robinson v. City of Ashdown,* 301 Ark. 226, 783 S.W.2d 53 (1990)). Inverse condemnation actions against utilities are governed by Ark.Code Ann. § 18–15–102 (Repl.2003). *See DeBoer, supra.* Subsection (b) provides that "[t]he measure of recovery in the action shall be the same as that governing proceedings by corporations for the condemnation of property." Ark.Code Ann. § 18–15–102(b). In other words, the same measure of damages is used whether the proceeding is an eminent domain action filed by the utility or an inverse condemnation action filed by the landowner. *See DeBoer, supra.*

As our court of appeals explained in *DeBoer:*

The measure of damages in a condemnation case depends on whether the land is taken by the sovereign or by another entity. When the sovereign exercises its right to take a portion of a tract of land, the proper measure of compensation is the difference in fair market value of the entire tract immediately before and after the taking. *Property Owners Improvement Dist. v. Williford,* 40 Ark. App. 172, 843 S.W.2d 862 (1992). When another entity such as a railroad, telephone company or, in this case, an electric company, exercises the right of eminent domain, just compensation is measured by the value of the portion of the land taken plus any damage to the remaining property. *See id.; see also Arkansas La. Gas Co. v. Howell,* 244 Ark. 86, 423 S.W.2d 867 (1968); *Arkansas La. Gas Co. v. James,* 15 Ark. App. 184, 692 S.W.2d 761 (1985). Fault has nothing to do with eminent domain or inverse condemnation; it is the taking of property that is actionable. *See Thompson v. City of Siloam Springs,* 333 Ark. 351, 969 S.W.2d 639 (1998). Further, recovery under the inverse condemnation statute is exclusive. *Missouri & N. Ark. R.R. Co. v. Chapman,* 150 Ark. 334, 234 S.W. 171 (1921). Additionally, the value of trees destroyed by a utility in constructing a right-of-way is not a separately compensable item of damage. *See Cramer v. Arkansas Okla. Gas Corp.,* 316 Ark. 465, 872 S.W.2d 390 (1994); *Arkansas La. Gas Co. v. Maxey,* 242 Ark. 698, 415 S.W.2d 52 (1967).

82 Ark. App. 400, 404–05, 109 S.W.3d 142, 144–45.

■ The Popes' remedy for the taking of their property was to recover the value of the portion of the land taken plus any damage to the remaining property. In granting Entergy's motion for directed verdict, the circuit court found:

Entergy has alleged and has moved and argued that the most that this is an inverse condemnation case and that is why they are involved in this lawsuit. [*sic*] And the Court believes that without doubt that is correct. The Court is also convinced and in reading and re-reading the [*DeBoer*] case, that the only recovery for such a taking is by Arkansas Code 18–15–102 and I'm reading from the head notes of that case that I mentioned. It says that [they are permitted] to recover only the value of the portion of the land taken plus any damage to the remaining property. The statute did not permit recovery of replacement value of the trees nor just the removal of the trees. And it even goes so far to say that the tree service and obviously, that's the group that cut the trees in this instance working at the request or involvement of Entergy. [*sic*] That the only recovery even as against them would be the damages allowed under eminent domain and inverse condemnation. That is the difference into the before and after values of the land taken. There is absolutely no testimony, none, much less credible, as regards the value of the land taken before and after. If anything, it's obvious that the land is worth more than it's ever been. Motion is granted as to Entergy.

While the Popes argue that the circuit court used the before and after value of the entire property as the standard for the measure of damages, the court specifically stated that the standard was the value of the portion of the land taken plus any damage to the remaining property. However, it was the circuit court's conclusion that there was no substantial evidence presented as to the value of the land before and/or after the taking.

The Popes contend that a reasonable jury could have concluded and assessed damages from Christine Pope's testimony regarding the listing price of their property with a real estate company and Ricky Pope's testimony that they were unable to sell their property after the real estate agent stopped bringing people to the land. However, regardless of whether that testimony was substantial evidence as to the value of their property as a whole, the circuit court found that the Popes failed to present any credible evidence of the value of the land taken or of any damage to the remainder of their property.

The Popes indeed did not provide any evidence as to any damage to the remainder of their property. They arguably provided some evidence as to the value of the land taken as they personally testified as to the size of their property and Ricky Pope testified that he believed that about four acres of their land was taken or rendered useless. Additionally, they testified that they believed their property was worth $129,000 at the time of the taking, or about $4,095.23 per acre. Their testimony was that this was the listing price of the property with the real estate company.

■ An owner of property is competent to testify as to value of his property if he has an intimate acquaintance with his property, but not every landowner's testimony constitutes substantial evidence. *See Arkansas State Hwy. Comm'n v. Watson*, 248 Ark. 422, 451 S.W.2d 741 (1970). A landowner's opinion as to the value of his property must be grounded in evidence of market value. *See Arkansas State Hwy. Comm'n v. Frisby*, 329 Ark. 506, 951 S.W.2d 305 (1997). The Popes did not provide any proof that their listing price

was considered reasonable, that their property likely could have been sold for that amount, or that land comparable to theirs was selling or being listed at a similar value. Therefore, they failed to prove that their opinion on the value of their land was based on anything other than speculation. For this reason, we cannot reverse the circuit court for finding that the evidence presented was insubstantial and granting Entergy's directed-verdict motion.

For their second point on appeal, the Popes argue that the circuit court erred in finding that the only measure of damages that could be recovered by the Popes for the damages to their trees and growing timber was the value of the timber taken, by granting Overton's directed-verdict motion on the conversion claim, and by setting the Popes' amount of compensatory damages as $566.85 ($188.95, trebled, pursuant to Ark.Code Ann. § 18–60–102(a)(1)). The Popes further contend that the circuit court erred by failing to instruct the jury on the measure of damages for their trespass claim. Overton responds that the circuit court did not err because the Popes failed to present any evidence that would support a finding of damages, regardless of what measure of damages was used.

■■■ Arkansas Code Annotated section 18–60–102 (Repl.2003) provides guidance on the possible damages in this case:

A person trespassing as follows shall pay a person injured treble the value of a thing damaged, broken, destroyed, or carried away, with costs, if the person shall: Cut down, injure destroy or carry away any tree placed or growing for use or shade or any timber, rails, or wood, standing, being, or growing on the land of another person.

Ark.Code Ann. § 18–60–102(a)(1). Arkansas courts have also recognized that when ornamental or shade trees are injured, the use made of the land should be considered and the owner compensated by damages representing the cost of replacing the trees. *See White River Rural Water Dist. v. Moon,* 310 Ark. 624, 839 S.W.2d 211 (1992); *First Elec. Coop. Corp. v. Charette,* 306 Ark. 105, 810 S.W.2d 500 (1991); *Revels v. Knighton,* 305 Ark. 109, 805 S.W.2d 649 (1991); *Worthington v. Roberts,* 304 Ark. 551, 803 S.W.2d 906 (1991); *Fleece v. Kankey,* 77 Ark. App. 88, 72 S.W.3d 879 (2002); *Bowman v. McFarlin,* 1 Ark. App. 235, 615 S.W.2d 383 (1981). However, only one theory of damages may be submitted to the jury. *See Worthington v. Roberts, supra.* Additionally, the evidence in each case will determine what instruction should be given. *See id.*

■■■ Here, Ricky Pope testified as to his opinion of the value of the trees taken from his land. No evidence of any other value was submitted by the Popes. Therefore, the only method of recovery available to the Popes was the value of the trees taken from his land. Ricky Pope testified that he estimated $8,000 in damages for the loss of the trees. However, he then admitted that there was no way to know exactly how many were removed and that there was not a precise way to determine the value of the loss of the lumber. He also admitted that his estimated timber damages could only be speculated. Given this testimony, the circuit court found that the only credible evidence as to the value of the timber taken was the testimony of Ryan Parker, the president of Parker Land and Timber. Parker estimated the value at $188.95. After reviewing the evidence presented to the circuit court, we do not find that the circuit court erred in granting Overton's directed-verdict motion on the conversion claim.

While the Popes also argue that the circuit court erred by failing to instruct the

jury on the measure of damages for their trespass claim, that argument is without merit. The jury did not find that Overton trespassed on the Popes' land and, therefore, we can hardly hold that the Popes were prejudiced by the failure to give such an instruction.

Finally, the Popes contend that the circuit court erred in awarding costs to Overton pursuant to Rule 68 of the Arkansas Rules of Civil Procedure because the rule does not apply to an unallocated offer of judgment. Alternatively, the Popes contend that the circuit court erred in awarding costs because the joint offer was not a bona fide offer as required by the rule and because all of the costs submitted by both Entergy and Overton were awarded solely to Overton. Overton avers that the circuit court properly awarded costs as it is liable to Entergy for its costs. We agree with the Popes that Rule 68 does not apply to an unallocated offer of judgment.

Generally speaking, an award of costs is within the sound discretion of the circuit court. *See City of Fort Smith v. Didicom Towers, Inc.*, 362 Ark. 469, 209 S.W.3d 344 (2005). However, when we must construe a court rule, our review is de novo. *See Sturdivant v. Sturdivant*, 367 Ark. 514, 241 S.W.3d 740 (2006). Additionally, when construing a court rule, we use the same means and canons of construction used to interpret statutes. *See Jackson v. Sparks Reg'l Med. Ctr.*, 375 Ark. 533, 294 S.W.3d 1 (2009). Our rules of statutory construction are well settled:

The basic rule of statutory construction is to give effect to the intent of the legislature. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accept-

ed meaning in common language. We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible.

*Dachs v. Hendrix*, 2009 Ark. 542, at 7, 354 S.W.3d 95, 100 (quoting *City of Little Rock v. Rhee*, 375 Ark. 491, 495, 292 S.W.3d 292, 294 (2009)).

Rule 68 encourages early settlement of claims and protects the party who is willing to settle from expenses and costs that will subsequently accrue. *See Warr v. Williamson*, 359 Ark. 234, 195 S.W.3d 903 (2004). The purpose of Rule 68 is to provide a defendant the means to compel a plaintiff to consider anew the merit of his or her claim at the time the offer is made and whether continued litigation is appropriate. *See id.* It provides:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and judgment shall be entered. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment exclusive of interest from the date of offer finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or

judgment, but the amount or extent of liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability. For purposes of this rule, the term "costs" is defined as reasonable litigation expenses, excluding attorney's fees.

Ark. R. Civ. P. 68 (2010).

Prior to trial in the instant case, Entergy and Overton made a joint offer of judgment to the Popes in the amount of $2,500.00. While that amount was more than the judgment eventually obtained by the Popes against Overton, the joint offer had been unallocated. In other words, it required the circuit court to speculate as to what amount Overton actually would have been responsible for out of the $2,500.00 offered and if that amount would have exceeded the final judgment obtained by the Popes.

The Popes argue that Rule 68 does not support that sort of application, and we agree. While we have never specifically held such in Arkansas, federal courts have made that determination when interpreting their own Rule 68. *See Harbor Motor Co., Inc. v. Arnell Chevrolet–Geo, Inc.,* 265 F.3d 638 (7th Cir.2001) (in which the Seventh Circuit concluded there was no way to compare an unapportioned offer of judgment made jointly by two defendants with the judgment obtained against one of the defendants alone); *Gavoni v. Dobbs House, Inc.,* 164 F.3d 1071 (7th Cir.1999) (in which the Seventh Circuit determined that an unapportioned offer did not permit the plaintiffs to independently evaluate the offer and could not be compared to the judgment finally obtained); *Johnston v.*

*Penrod Drilling Co.,* 803 F.2d 867 (5th Cir.1986) (in which the Fifth Circuit concluded that Rule 68 did not apply to an unapportioned joint offer from two defendants because the figure in the joint offer and the dollar judgment obtained only against one defendant were not comparable figures). We find these decisions persuasive, and we hold that Rule 68 does not apply to an unallocated joint offer as in the instant case.

For this reason, the circuit court's order awarding Rule 68 costs to Overton is reversed. Because we hold that the circuit court should not have awarded these costs, the Popes alternative arguments on appeal regarding the award of Rule 68 costs need not be addressed.

To conclude, we affirm the circuit court's order granting Entergy's motion for directed verdict, granting Overton's motion for directed verdict on the conversion claim, and setting the Popes' amount of compensatory damages as $566.85. However, we reverse the circuit court's order awarding Rule 68 costs to Overton.

Affirmed in part; reversed in part.